Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL I

| | | |
|---|---|---|
| PROSOL-UTIER Capítulo Centro De Recaudación de Ingresos Municipales (CRIM)<br><br>Recurrente<br><br>v.<br><br>Departamento Del Trabajo y Recursos Humanos<br><br>Recurrido | KLRA202400244 | Revisión Judicial procedente Departamento del Trabajo y Recursos Humanos<br><br>Sobre: Certificación de Agrupación Bona Fide al amparo de la Ley Núm. 134 del 19 de julio de 1960, conocida como "Ley para autorizar el descuento de cuotas de asociaciones, federaciones o uniones de los empleados el Gobierno de Puerto Rico" |

Panel integrado por su presidente, el Juez Sánchez Ramos, el Juez Pagán Ocasio, el Juez Marrero Guerrero y la Jueza Boria Vizcarrondo.

Pagán Ocasio, juez ponente

## SENTENCIA

En San Juan, Puerto Rico, a 11 de julio de 2024.

## I.

El 15 de mayo de 2024, PROSOL-UTIER Capítulo Centro de Recaudación de Ingresos Municipales (PROSOL o parte recurrente) presentó una *Solicitud de Revisión Judicial* en la que solicitó que revoquemos una *Decisión del Secretario del Trabajo y Recursos Humanos* emitida por el Secretario del Departamento del Trabajo y Recursos Humanos (Secretario o foro recurrido) el 5 de marzo de 2024, notificada por correo el 11 de marzo de 2024.[1] En la determinación, el Secretario denegó una petición de la parte

---

[1] Apéndice de la *Solicitud de revisión judicial*, págs. 1-11.

Número Identificador
SEN2024_____

recurrente para que fuera certificada como organización *bona fide* en todas las regiones del Centro de Recaudación de Ingresos Municipales (CRIM) en las que están ubicados cincuenta y cuatro (54) empleados que solicitaron afiliarse a la unión, al amparo de la *Ley para autorizar el descuento de cuotas de asociaciones, federaciones o uniones de los empleados municipales,* Ley Núm. 139 de 1961, según enmendada, 3 LPRA secs. 702 *et seq.* (Ley Núm. 139-1961).

El 16 de mayo de 2024, emitimos una *Resolución* en la que le concedimos al Departamento del Trabajo y Recursos Humanos (DTRH o parte recurrida) un término de treinta (30) días para presentar su alegato en oposición.

El 20 de junio de 2024, el DTRH radicó una *Solicitud de término* en la que solicitó que le concediéramos un término adicional para oponerse al recurso.

El 21 de junio de 2024, emitimos una *Resolución* en la que le concedimos a la parte recurrida hasta el 28 de junio de 2024 para presentar su alegato en oposición.

El 28 de junio de 2024, el DTRH presentó un *Alegato en oposición* en el que solicitó que confirmemos la determinación recurrida.

Con el beneficio de la comparecencia de las partes, damos por perfeccionado el recurso. En adelante, pormenorizaremos los hechos procesales relevantes a la atención de la presente *Solicitud de revisión judicial.*

**II.**

El caso de marras tiene su génesis el 26 de junio de 2023 cuando PROSOL solicitó al Secretario que expidiera una certificación a favor de la parte recurrente reconociéndola como

organización *bona fide* de servidores públicos con el fin de agrupar a cincuenta y cuatro (54) empleados del CRIM.[2]

Luego de múltiples trámites procesales, los cuales incluyeron el recogido de insumo por el Secretario de las posiciones del Director Ejecutivo del CRIM y de la Directora de la Oficina de Recursos Humanos del CRIM,[3] el 5 de marzo de 2024, el Secretario emitió la *Decisión del Secretario del Trabajo y Recursos Humanos* recurrida en la que rechazó certificar a PROSOL como una organización *bona fide* al amparo de la Ley Núm. 139-1961, *supra*.[4] A juicio del Secretario, el Director Ejecutivo del CRIM no está facultado en ley para realizar los descuentos en las nóminas de los empleados del CRIM. Basó su determinación en que: (1) la Ley Núm. 139-1961, *supra*, dispone que los empleados municipales autorizan al alcalde para realizar el descuento para el pago de cuotas; (2) el *Código Municipal de Puerto Rico*, Ley Núm. 107 de 2020, según enmendada, 21 LPRA secs. 7001 *et seq.*, (Código Municipal), dispone que el CRIM es una entidad municipal independiente y separada de cualquier agencia o instrumentalidad y que su administración de recursos humanos se regirá por sus disposiciones, pero no incluye al Director Ejecutivo o la Junta de Gobierno en la definición de Autoridad Nominadora; y (3) el Código Municipal, *supra*, no incluye al CRIM dentro de las definiciones de empleado o municipalidad; y (4) el Director Ejecutivo del CRIM es la Autoridad Nominadora de los empleados que laboran en esa entidad.

---

[2] Íd., págs. 14-121.

[3] Íd., págs. 2-3. Lo anterior se desprende del recuento procesal que consignó el Secretario en la *Decisión del Secretario del Trabajo y Recursos Humanos*. Según consta en la determinación, el Director Ejecutivo del CRIM expresó que existía un vacío jurídico para permitir que una agrupación *bona fide* existiera en el CRIM, mientras que la Directora de la Oficina de Recursos Humanos del CRIM planteó que los empleados que solicitaron la autorización para el descuento de cuotas a favor de PROSOL no estaban afiliados a ninguna otra agrupación sindical, ni se les descontaba cuota alguna para ese momento. Las partes no cuestionan dicha relación de hechos.

[4] Íd., págs. 1-11.

El 5 de abril de 2024, la parte recurrente radicó una *Moción en solicitud de reconsideración* en la que reiteró que procedía que PROSOL fuera certificada como organización *bona fide*.[5]

En vista de que el foro recurrido no atendió la moción dentro del término estatutario de quince (15) días, la reconsideración se entiende rechazada de plano.

Inconforme, el 15 de mayo de 2024, PROSOL presentó el recurso de epígrafe y le imputó al Secretario la comisión de los siguientes errores:

> Primer error: Erró el Departamento del Trabajo y Recursos Humanos al concluir que las disposiciones de la Ley Núm. 139-1961 no son aplicables a los empleados del CRIM.
>
> Segundo error: Erró el Departamento del Trabajo y Recursos Humanos en su interpretación de la Ley Núm. 107-2020 al concluir que los empleados del CRIM no pueden organizarse en una bonafide al amparo de la Ley Núm. 139-1961.
>
> Tercer error: Erró el Departamento del Trabajo y Recursos Humanos en la interpretación acogida en su determinación al concluir que la definición cobijada en el Código Municipal en cuanto a la autoridad nominadora no incluye al Director Ejecutivo del CRIM ni a su Junta de Gobierno, así como tampoco incluye al CRIM en las definiciones de los conceptos empleados y municipalidad.

Es su posición que el Secretario se equivocó en su interpretación de la Ley Núm. 139-1961, *supra*, y que PROSOL cumplió con todos los requisitos para ser certificada como agrupación *bona fide*. A su entender, el CRIM es una entidad municipal y gubernamental que no es totalmente independiente de la estructura establecida por el Código Municipal, *supra*. Según esboza, el Código Municipal, *supra*, exige que nueve (9) de los once (11) puestos de la Junta de Gobierno del CRIM estén ocupados por alcaldes y requiere que dicho cuerpo apruebe todos los nombramientos del Director Ejecutivo del CRIM. Esto, arguye, provoca que la responsabilidad de los nombramientos recaiga sobre los alcaldes como autoridad máxima, no en el Director

---

[5] Íd., págs. 122-131. La moción fue suscrita el 1 de abril de 2024 y, conforme al recibo del Correo Postal de los Estados Unidos, enviada por correo certificado ese mismo día y recibida por el DTRH el 5 de abril de 2024, dentro del término para solicitar la reconsideración de la determinación. Véase Íd., págs. 132-133.

Ejecutivo del CRIM. Es decir, los alcaldes que componen la Junta de Gobierno son la Autoridad Nominadora.

Por otra parte, también plantea que, si existe un vacío jurídico como señaló el Director Ejecutivo del CRIM y como existiría de sostenerse la determinación recurrida, entonces se debía realizar un análisis integral de las leyes, reglamentos y jurisprudencia aplicable. Su propuesta en este sentido es que la política pública del gobierno es defender los derechos constitucionales de los trabajadores a organizarse, que el Código Municipal, *supra*, recogió la intención legislativa de que los municipios sean autónomos y, por ello, dotó al CRIM de ciertas facultades administrativas, pero no tuvo la intención de convertirlo en un cuerpo administrativo distinto. Por ello, argumenta, el descargo de las funciones del CRIM recae en la aprobación de los alcaldes en la Junta de Gobierno en representación de todos los municipios de Puerto Rico. Todo ello, alega, demuestra que la Ley Núm. 139-1961, *supra*, aplica al presente caso y, ante el cumplimiento de PROSOL con todos los requisitos, procede su certificación como agrupación *bona fide*.

El 28 de junio de 2024, el DTRH radicó un *Alegato en oposición* en el que argumentó a favor de confirmar la determinación recurrida. Según planteó, el Director Ejecutivo del CRIM es la Autoridad Nominadora de dicha entidad y no posee la facultad en ley para descontar del salario de los empleados las cuotas de la agrupación a la que están afiliados. Es su posición que la Ley Núm. 139-1961, *supra*, no es aplicable al caso de marras porque solamente les otorga a los alcaldes la facultad de realizar este tipo de descuento al salario de los empleados que laboran en su municipio. Además, arguye que la determinación recurrida no afecta el derecho de organización laboral de los empleados del CRIM, quienes continuarán afiliados a PROSOL, pero cuyas cuotas no serían aportadas directamente mediante el descuento a sus salarios.

En adelante, pormenorizamos el derecho aplicable a la presente controversia.

**III.**

**A.**

La *Ley de Procedimiento Administrativo Uniforme del Gobierno de Puerto Rico*, Ley Núm. 38 de 2017, según enmendada, 3 LPRA secs. 9601 *et seq.*, (LPAU) establece el alcance de la revisión judicial de las determinaciones de las agencias administrativas. A tenor de esta y la jurisprudencia aplicable, la revisión judicial consiste, esencialmente, en determinar si la actuación de la agencia se dio dentro de las facultades que le fueron conferidas por ley, si es compatible con la política pública que la origina y si es legal y razonable. *Capó Cruz v. Junta de Planificación*, 204 DPR 581, 590-591 (2020); *Rolón Martínez v. Supte. Policía*, 201 DPR 26, 35 (2018). Es decir, que este tipo de revisión busca limitar la discreción de las agencias y garantizar que estas desempeñen sus funciones de acuerdo con los confines de la ley. *García Reyes v. Cruz Auto Corp.*, 173 DPR 870, 891-892 (2008). De la mano con esto, es norma reiterada de derecho que los foros revisores le concederán gran deferencia y consideración a las decisiones de las agencias administrativas, debido a la vasta experiencia y el conocimiento especializado sobre los asuntos que le fueron delegados. *Graciani Rodríguez v. Garage Isla Verde, LLC,* 202 DPR 117, 126 (2019); *Rolón Martínez v. Supte. Policía*, supra. Conforme a ello, los tribunales deben ser cautelosos al intervenir con las decisiones de los organismos administrativos. *Metropolitana, S.E. v. A.R.Pe.*, 138 DPR 200, 213 (1995); *Gallardo v. Clavell*, 131 DPR 275, 289–290 (1992).

Por las razones antes aludidas, las decisiones de las agencias administrativas gozan de una presunción de regularidad y corrección. *Capó Cruz v. Junta de Planificación*, supra; *Rolón*

*Martínez v. Supte. Policía*, supra; *García Reyes v. Cruz Auto Corp.*, supra, pág. 892. La presunción de corrección que acarrea una decisión administrativa deberá sostenerse por los tribunales a menos que la misma logre ser derrotada mediante la identificación de evidencia en contrario que obre en el expediente administrativo. *Misión Ind. P.R. v. J.P.*, 146 DPR 64, 130 (1998).

Así, al momento de revisar una decisión administrativa, el criterio rector para los tribunales será la <u>razonabilidad</u> en la actuación de la agencia. *Rebollo v. Yiyi Motors,* 161 DPR 69, 76 (2004). Cónsono con ello, será necesario determinar si la agencia actuó de forma arbitraria, ilegal o de manera tan irrazonable que su actuación constituyó un abuso de discreción. *Rolón Martínez v. Supte Policía,* supra.

Según ha quedado establecido como norma general, el ejercicio de revisión judicial de una decisión administrativa se limita a tres asuntos: (1) la concesión del remedio apropiado; (2) la revisión de las determinaciones de hecho conforme al criterio de evidencia sustancial que obra en el expediente administrativo; y (3) la revisión completa y absoluta de las conclusiones de derecho. *Asoc. Fcias. v. Caribe Specialty et al. II*, 179 DPR 923, 940 (2010).

De esta forma, en el contexto de las <u>determinaciones de hechos</u> realizadas por las agencias administrativas, nuestro más alto foro ha pautado que los tribunales no deben intervenir o alterar las determinaciones de hechos de un organismo administrativo "si las mismas están sostenidas por evidencia sustancial que surja del expediente administrativo considerado en su totalidad". *Otero Mercado v. Toyota,* 163 DPR 716, 727-728 (2005); *Domínguez v. Caguas Expressway Motors, Inc.*, 148 DPR 387, 397 (1999). Dentro de este marco, evidencia sustancial se entiende como "aquella evidencia pertinente que una mente razonable pueda aceptar como adecuada para sostener una conclusión". *Ramírez v.*

8

***Depto. de Salud***, 147 DPR 901, 905 (1999). Por ello, la parte que

alegue que alegue ausencia de evidencia sustancial debe demostrar

que existe:

> "[O]tra prueba en el récord que razonablemente reduzca o menoscabe el peso de tal evidencia, hasta el punto de que un tribunal no pueda, concienzudamente, concluir que la evidencia sea sustancial [...] hasta el punto que se demuestre claramente que la decisión [del organismo administrativo] no está justificada por una evaluación justa del peso de la prueba" que tuvo ante su consideración. ***Metropolitana S.E. v. A.R.Pe.***, 138 DPR 200, 213 (1995) citando a ***Hilton Hotels International, Inc. v. Junta de Salario Mínimo***, 74 DPR 670, 686 (1983).

En otras palabras, la parte recurrente tiene la obligación de derrotar

la presunción de corrección de los procesos y de las decisiones

administrativas. ***Fac. C. Soc. Aplicadas, Inc. v. C.E.S.***, 133 DPR

521, 532 (1993). Si no demuestra que existe esa otra prueba, las

determinaciones de hechos del organismo administrativo deben ser

sostenidas por el tribunal revisor. ***Ramírez v. Depto. de Salud***,

supra.

Ahora bien, cuando se trate de conclusiones de derecho que

no envuelvan interpretaciones dentro del área de especialización de

la agencia, éstas se revisarán por los tribunales sin circunscribirse

al razonamiento que haya hecho la agencia. ***Capó Cruz v. Junta de

Planificación***, supra; ***Pacheco v. Estancias***, 160 DPR 409, 432

(2003); ***Rivera v. A & C Development Corp.***, 144 DPR 450, 461

(1997). Cuando las determinaciones de las agencias estén

entremezcladas con conclusiones de derecho, el tribunal tendrá

amplia facultad para revisarlas, como si fuesen una cuestión de

derecho propiamente. ***Pacheco v. Estancias***, supra, pág. 433;

***Rivera v. A & C Development Corp.***, *supra.* En nuestro

ordenamiento jurídico, es norma reiterada que, en el proceso de

revisión judicial, los tribunales tienen la facultad de revocar al foro

administrativo en materias jurídicas. Véase, además, la Sec. 4.5 de

LPAU, *supra* sec. 9675.

Es pertinente señalar que nuestro sistema de adjudicación administrativo busca "alentar la solución informal de las controversias", según establece la Sec. 1.2 de la LPAU, *supra* sec. 9602. Para ello, la LPAU permite que las agencias establezcan las reglas y procedimientos que regirán ante sí para la solución rápida e informal de las controversias; siempre salvaguardando los derechos garantizados por ley. Íd. Por lo cual, las agencias no quedan sometidas a un procedimiento rígido que obstaculiza la producción de una solución rápida, justa y económica. Íd.

En suma, la referida deferencia debe ceder cuando se demuestre que: (1) la decisión no está basada en evidencia sustancial; (2) la agencia ha errado en la aplicación de la ley; (3) la actuación de la agencia resulta ser arbitraria, irrazonable o ilegal; y (4) la actuación administrativa lesiona derechos constitucionales fundamentales. **The Sembler Co. v. Mun. de Carolina**, 185 DPR 800, 822 (2012) (*citando a* **Empresas Ferrer v. A.R.PE.**, 172 DPR 254, 264 (2007)).

**B.**

El Código Municipal, *supra*, fue promulgado con el fin de integrar las leyes sobre la organización, administración y funcionamiento de los municipios de Puerto Rico. En lo pertinente, para lograr esos fines, derogó la *Ley del Centro de Recaudación de Ingresos Municipales*, Ley Núm. 80 de 1991, según enmendada, 21 LPRA ant. sec. 5801 *et seq.* y la *Ley de contribución municipal sobre la propiedad,* Ley Núm. 83 de 1991, según enmendada, 21 LPRA ant. secs. 5001 *et seq.* Estas leyes crearon el CRIM, cuya responsabilidad primaria sería recaudar, recibir y distribuir los fondos públicos de partidas que corresponden a los municipios, y una contribución básica sobre la propiedad inmueble a favor de los municipios, respectivamente.

Ahora bien, el Código Municipal, *supra,* conservó la figura del CRIM en su Libro VII, titulado Hacienda Municipal, y en su Art. 7.002 la instituyó como entidad a cargo de ofrecer servicios fiscales a los municipios con la responsabilidad primaria de recaudar, recibir y distribuir los fondos públicos que le correspondan a los municipios. 21 LPRA sec. 7951. A esos efectos, dispuso que el CRIM es una "entidad municipal, independiente y separada de cualquier otra agencia o instrumentalidad del Gobierno de Puerto Rico. Íd.

A su vez, por virtud del Art. 7.004 del Código Municipal, *supra* sec. 7953, el CRIM está dirigido por una Junta de Gobierno integrada por once (11) miembros de los cuales nueve (9) serán alcaldes, quienes representarán a todos los municipios de Puerto Rico. Los otros dos (2) miembros son el Director Ejecutivo de la Autoridad de Asesoría Financiera y Agencia Fiscal de Puerto Rico (AAFAF) y un funcionario público con experiencia en asuntos municipales, quien será nombrado por el Gobernador. Íd. Entre las facultades y funciones de la Junta de Gobierno, el Art. 7.006 del Código Municipal, *supra* sec. 7955, le otorga: (1) asegurar que el CRIM cumpla sus funciones y responsabilidades según el Código Municipal, *supra*; (2) aprobar la organización interna del CRIM, su presupuesto y su sistema de personal, entre otros aspectos; y (3) nombrar al Director Ejecutivo del CRIM y adoptar un plan de clasificación y retribución para los funcionarios, agentes y empleados necesarios para el funcionamiento del CRIM. Por su parte, el Director Ejecutivo del CRIM es quien dirige el CRIM, tras ser nombrado por la Junta de Gobierno, así como prescribe el Art. 7.007 del Código Municipal, *supra* sec. 7956.

En cuanto a los recursos humanos del CRIM, el Art. 7.009 del Código Municipal, *supra* sec. 7958, establece que este asunto se regirá según las disposiciones del Libro II del Código, titulado *Administración Municipal,* el cual se dedica a la organización,

planificación y control de los bienes y recursos humanos disponibles a los municipios. En dicho Libro, el Capítulo VI enumera una extensa serie de normas aplicables a los municipios para el manejo de sus recursos humanos. A su vez, el referido Artículo también excluye al CRIM de la aplicación de la *Ley para la Administración y Transformación de los Recursos Humanos en el Gobierno de Puerto Rico*, Ley Núm. 8 de 2017, según enmendada, 3 LPRA secs. 1469 *et seq.*

Por otra parte, resulta pertinente que el Art. 8.001 del Código Municipal, *supra* sec. 8351, establece entre las definiciones aplicables a dicho estatuto que la Autoridad Nominadora se refiere a "[l]a que posee la facultad legal para hacer nombramientos para puestos en el Gobierno. En la Rama Ejecutiva municipal, significará el Alcalde y en la Rama Legislativa, significará el Presidente de la Legislatura Municipal". Entretanto, se define empleado como:

> "Toda persona que ocupe un puesto y empleo en el gobierno municipal, que preste un servicio a cambio de salario, sueldo o cualquier otro tipo de remuneración que no esté investido de parte de la soberanía del gobierno municipal y comprende los empleados regulares, irregulares, de confianza, empleados con nombramientos transitorios y los que estén en período probatorio". Íd.

### C.

El derecho de las personas a asociarse y organizarse libremente para fines lícitos está consagrado expresamente en la Sección 6 del Artículo II de la Constitución del Estado Libre Asociado de Puerto Rico (Constitución del ELA). **Const. PR,** Art. II, Sec. 6. Este derecho se concibe como uno fundamental, relacionado directamente con la libertad humana y la democracia. *Rodríguez Casillas et al. v. Colegio,* 202 DPR 428, 433 (2019).

A su vez, el derecho a organizarse y a negociar colectivamente con sus patronos, por medio de representantes de su propia y libre selección, de los trabajadores de empresas, negocios y patronos privados y de agencias o instrumentalidades del gobierno que

funcionen como empresas o negocios privados está cobijado por la Sección 17 del Artículo II de la Constitución del ELA. **Const. PR,** Art. II, Sec. 17. Si bien la Constitución del ELA no le extiende el derecho constitucional a la organización sindical y la negociación colectiva a la mayoría de los empleados del sector público, la Asamblea Legislativa ha garantizado es derecho de forma estatutariamente a la mayoría de los empleados de la Rama Ejecutiva, mediante leyes como la *Ley de Relaciones del Trabajo para el Servicio Público de Puerto Rico*, Ley Núm. 45 de 1998, según enmendada, 3 LPRA sec. 1451 *et seq.*

En esa misma tradición, forjando el andamiaje legal de las relaciones del trabajo en el Gobierno de Puerto Rico, la Asamblea Legislativa también promulgó la Ley Núm. 139 de 1961, *supra*, con el fin de autorizar el descuento de cuotas para uniones de los empleados municipales. Concretamente, el Art. 1 de la Ley Núm. 139-1961, *supra* sec. 4551, permite que los empleados de los municipios, organizados en una agrupación *bona fide* de servidores públicos, autoricen por escrito al alcalde del municipio en el que trabajen para que descuente de sus salarios las cantidades necesarias para el pago de cuotas y otros gastos que estén obligados a satisfacer como miembros de la agrupación. De acuerdo con el marco de este estatuto, los empleados solicitarán el descuento al alcalde del municipio en que trabajan. Íd. Así, el alcalde es el funcionario público a cargo de llevar a cabo los propósitos de la Ley Núm. 139-1961, *supra.*

Antes de la Ley Núm. 139-1961*, supra*, la Asamblea Legislativa también había promulgado un estatuto muy similar para autorizar el descuento del mismo tipo de cuotas de los salarios de los empleados del Gobierno de Puerto Rico al aprobar la *Ley para Autorizar el Descuento de Cuotas de Asociaciones, Federaciones, o Uniones de los Empleados del Gobierno de Puerto Rico*, Ley Núm. 134

de 1960, según enmendada, 3 LPRA sec. 702 *et seq.*, (Ley Núm. 134-1960). Según el Art. 1 de la Ley Núm. 134-1960, *supra* sec. 702 Inciso (a), **los empleados de la Rama Ejecutiva**, incluyendo agencias, corporaciones públicas e instrumentalidades, que estén organizados en una agrupación *bona fide*, podrán autorizar al jefe del departamento, agencia o instrumentalidad pública en que trabajen para que descuente de su salario la cantidad necesaria para sufragar cuotas y otros gastos obligados por su membresía en la agrupación. De esta forma, es el jefe del departamento, agencia o instrumentalidad pública el funcionario facultado para realizar los descuentos de los salarios de los empleados. Adviértase, pues, que ambas piezas legislativas crean un esquema similar.

**IV.**

Pende ante nos la controversia sobre si procede la certificación de una asociación de trabajadores del CRIM como agrupación *bona fide* para que reciba las cuotas de la asociación por medio de descuentos al salario de sus miembros, al amparo de la Ley Núm. 139-1961, *supra.*

A nivel administrativo, mediante la decisión recurrida, el Secretario del DTRH determinó que no procedía certificar a PROSOL como una organización *bona fide* para los efectos solicitados. Llegó a esta conclusión luego de concluir que el Director Ejecutivo del CRIM no tiene facultad en ley para autorizar los descuentos en las nóminas de los empleados de dicha entidad. A su entender, la Ley Núm. 139-1961, *supra*, sitúa únicamente en los alcaldes de los municipios la facultad de realizar los descuentos para el pago de cuotas y, por ello, el Director Ejecutivo del CRIM, la Autoridad Nominadora de la entidad, no está autorizado por ley alguna para realizar los descuentos solicitados por los empleados afiliados a PROSOL.

En desacuerdo, PROSOL argumenta que, como los nombramientos realizados por el Director Ejecutivo del CRIM requieren la aprobación de la Junta de Gobierno y dicho cuerpo está compuesto por once (11) miembros de los cuales nueve (9) son alcaldes, la responsabilidad realmente recae sobre los alcaldes. Esto, arguye, provoca que el CRIM no sea un ente del todo independiente de los municipios y, por ello, a los empleados del CRIM debe aplicársele la Ley Núm. 139-1961, *supra.* Según esboza, así se evitaría interpretar que existe un vacío jurídico que imposibilita que los empleados del CRIM afiliados a PROSOL autoricen el descuento de las cuotas de la unión de sus salarios. Asimismo, aduce que se impediría el efecto negativo que implicaría la denegatoria del descuento sobre el derecho de organización colectiva de estos empleados.

En apoyo de la determinación recurrida, el DTRH plantea que la Ley Núm. 139-1961, *supra,* faculta con autoridad de descontar las cuotas de los empleados municipales únicamente a los alcaldes y, como la Autoridad Nominadora en el CRIM es el Director Ejecutivo, quien no es un alcalde, este funcionario no tiene facultad para descontar cantidad alguna por este concepto. A su vez, esboza que la determinación recurrida no afecta el derecho de organización laboral de los empleados del CRIM afiliados a PROSOL, toda vez que la parte recurrente podrá continuar sus trabajos y los empleados su afiliación, pero no gozaría del beneficio de recibir sus aportaciones mediante el descuento al salario de sus miembros.

Tras un análisis objetivo, sereno y cuidadoso del expediente administrativo y ante la deferencia a la determinación administrativa, resolvemos que el Secretario no incidió en los errores señalados por la parte recurrente. Por el contrario, la determinación recurrida es correcta en derecho, no es irrazonable y no adolece de pasión, prejuicio, parcialidad, arbitrariedad, ilegalidad, o abuso de

discreción. De un examen sosegado de la Ley Núm. 139-1961, *supra*, no surge que exista autoridad en ley para que el Director Ejecutivo o la Junta de Gobierno del CRIM realicen los descuentos solicitados por los empleados del CRIM afiliados a PROSOL. Además, los argumentos presentados por PROSOL para establecer una suerte de aplicación constructiva de la Ley Núm. 139-1961, *supra*, a los empleados del CRIM no nos convencen.

De acuerdo con el andamiaje municipal vigente, establecido por el Código Municipal, *supra*, el CRIM es una entidad que, si bien es municipal, es independiente y separada de cualquier otra agencia o instrumentalidad del Gobierno de Puerto Rico. Asimismo, en la administración de sus recursos humanos, el CRIM debe regirse por las normas aplicables y diseñadas para el manejo por los municipios de estos recursos. En el CRIM, la dirección es liderada por el Director Ejecutivo, bajo la supervisión de la Junta de Gobierno; en la Rama Ejecutiva de los municipios, por el Alcalde. Es decir, la Autoridad Nominadora del CRIM, es el Director Ejecutivo; la de un municipio, su alcalde. Ahora bien, para efectos de los empleados de cada municipio, la Ley Núm. 139-1961, *supra*, únicamente faculta a los **alcaldes** a realizar el descuento del salario de los empleados **de su municipio**, no faculta a otros funcionarios, sea el Director Ejecutivo del CRIM o la Junta de Gobierno respecto al salario de los empleados bajo su dirección. Así, ninguno de estos últimos posee facultad en ley de realizar los descuentos solicitados en este caso. De un análisis pormenorizado de las disposiciones legales aplicables resulta palmaria la identidad de la autoridad nominadora en el CRIM.

Por otra parte, tampoco es permisible adoptar la interpretación laxa propuesta por PROSOL de la Ley Núm. 139-1961, *supra*. Su posición es que el descuento instituido por la referida Ley es aplicable a los empleados del CRIM porque la autoridad nominadora en esa entidad realmente recae sobre los

nueve alcaldes que componen la Junta de Gobierno y, por ello, el CRIM no es un ente totalmente independiente de los municipios. Este planteamiento no encuentra apoyo en ninguno de los estatutos aplicables, ni en las normas de interpretación jurídica de nuestra jurisdicción. Si bien el Director Ejecutivo del CRIM es nombrado por la Junta de Gobierno y algunas de sus decisiones están condicionadas a la aprobación de esta, dicho funcionario ostenta la autoridad nominadora en el CRIM una vez entra en funciones. En esa figura están investidas las labores ejecutivas del CRIM. La participación de alcaldes en la composición de la Junta de Gobierno no es razón para variar esa interpretación y, mucho menos, para aplicar, por *fíat* judicial, las disposiciones de un estatuto que por su texto no le aplica a una entidad municipal como el CRIM. Resolver como propone PROSOL implicaría determinar, contrario al texto claro de la Ley Núm. 139-1961, *supra*, que, en virtud de esa Ley, un funcionario distinto al alcalde del municipio en el que labora un empleado municipal puede realizar descuentos al salario de un empleado que no labora para un municipio en específico para satisfacer la cuota de la agrupación a la que pertenece. Esa interpretación no es cónsona con la normativa jurídica precedentemente expuesta.

Por último, la actuación administrativa recurrida en este caso no lesiona derechos constitucionales fundamentales de los empleados del CRIM afiliados a PROSOL. De esta forma, se preserva el derecho de asociación de los cincuenta y cuatro (54) empleados del CRIM a afiliarse y asociarse bajo el estandarte de la organización de su predilección. No obstante, cabe recordar que el derecho de estos empleados públicos a la organización y negociación colectiva es de raigambre estatutario, promulgado así por la Asamblea Legislativa. Así, ausente un estatuto que faculte la organización y negociación colectiva de estos empleados, no resulta posible acoger

la posición de la parte recurrente. Empero, en lo que concierne al presente recurso, únicamente se resuelve que PROSOL no podrá recibir las cuotas de la asociación por medio de descuentos directos al salario de los empleados del CRIM afiliados a ella. Este mecanismo estatutario, creado por la Ley Núm. 139-1961, *supra,* es una ventaja creada por la Asamblea Legislativa, pero no es un aspecto esencial, inherente y primordial de los derechos de asociación y de organización laboral de estos empleados.

Por los fundamentos esbozados, procede confirmar la determinación administrativa recurrida.

**V.**

Por los fundamentos pormenorizados, se *confirma* la *Decisión del Secretario del Trabajo y Recursos Humanos* recurrida.

Lo acordó el Tribunal y lo certifica la Secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones